RENTCLUB, INC., a Florida corporation, Plaintiff,

v.

TRANSAMERICA RENTAL FINANCE CORPORATION, a Delaware corporation, Defendant.

TRANSAMERICA RENTAL FINANCE CORPORATION, a Delaware corporation, Counter–Plaintiff,

v.

RENTCLUB, INC., a Florida corporation; Michael H. McCaskey and Maria M. McCaskey, Counter–Defendants.

No. 90–1452–CIV–T–17.

United States District Court, M.D. Florida, Tampa Division.

June 30, 1992.

David M. Snyder, Trenam, Simmons, Kemker, Scharf, Barkin, Frye & O'Neill, P.A., Tampa, FL, for Rentclub, Inc.

Dennis Michael Campbell, Mershon, Sawyer, Johnston, Dunwody & Cole, Miami, FL, for Transamerica Rental Finance Corp., and Transamerica Commercial Finance Corp.

David M. Snyder, Stanley Howard Eleff, Trenam, Simmons, Kemker, Scharf, Barkin, Frye & O'Neill, P.A., Tampa, FL, for Michael H. McCaskey and Maria M. McCaskey.

## ORDER TO DISQUALIFY COUNSEL

KOVACHEVICH, District Judge.

This cause is before the Court on the following pleadings: Transamerica Rental Finance Corporation (Transamerica)'s motion to disqualify and request for oral argument (Docket No. 155); Transamerica's request for judicial notice in relation to the motion to disqualify (Docket No. 156); Transamerica's memorandum in support of motion to disqualify (Docket No. 157); Transamerica's appendix to memorandum (Docket No. 160); Michael H. McCaskey and Maria H. McCaskey (the McCaskey)'s opposition to the motion to disqualify (Docket No. 164); McCaskeys' appendix to their opposition (Docket No. 165); and Affi-

davit of Michael McCaskey in response to motion to disqualify (Docket No. 166).

A counterclaim (Docket No. 22) was filed in this cause by Transamerica on August 29, 1991, naming Rentclub, Inc. (Rentclub) and the McCaskeys as defendants. The McCaskeys were named in Counts VI and VII of the counterclaim, which claims asserted that the McCaskeys executed absolute and unconditional guaranties of the obligations of Rentclub which have been defaulted on by Rentclub. The McCaskeys have not challenged the claim that the guaranties were absolute and unconditional. They did file answers to the counterclaim on December 16, 1991. (Docket Nos. 86 and 87) maintaining that Transamerica was in breach of contract thus excusing or discharging Rentclub and the guarantors from their obligations to Transamerica. Additionally, the guarantors asserted by way of affirmative defenses, that Transamerica has damaged Rentclub and any damages awarded to Rentclub under the second amended complaint should be used to offset any money due to Transamerica.

On February 26, 1992, Rentclub notified this Court that it had filed for bankruptcy protection pursuant to Chapter 11, Bankruptcy Code and that an automatic stay was in effect. This Court thereafter administratively closed the action pending the outcome of the bankruptcy case and by stipulation, Transamerica filed this motion to disqualify counsel for the McCaskeys to which response was filed on April 6, 1992.

Transamerica sought to reopen the cause of action as it applies to the McCaskeys, who are not in bankruptcy, and to have the Court address the pending motions relevant only to those counter-defendants: the motion to disqualify and the motion to strike affirmative defenses of the McCaskeys. The Court granted the motion to reopen and denied the motion to strike by separate orders. The Court granted the request for oral argument and heard oral arguments by counsel for the opposing parties on June 12, 1992.

## FACTS

The instant motion seeks an order from this Court disqualifying Trenam, Simmons, Kemker, Scharf, Barkin, Frye, & O'Neill (Trenam, Simmons) from further participation as counsel for the McCaskeys. In support of the motion, Transamerica submits the following facts and argument:

1. Disqualification is based on violation of the maxim that attorneys must avoid even the appearance of professional impropriety and Rules 4-1.6, 4-4.2, 4-8.4(c) and 4-8.4(d), *Fla.Bar Code of Prof. Conduct.*

2. On February 6, 1992, Trenam, Simmons retained as a paid "trial consultant" Rafael R. Canales, Jr. (Canales) rendering an advance payment of $5,000.00 against a rate of $50.00 per hour.

3. From May 20, 1989, through September 23, 1991, Canales was employed by Transamerica, through its division known as Magic Rentals n/k/a Magic Rent-to-own (Magic). During most of that time, Canales was Magic's finance manager; in fact, Canales contends he was Magic's chief financial officer.

4. As Magic's purported chief financial officer, Canales was privy to confidential and proprietary information and had access to confidential and business documents belonging to Transamerica and Magic. Additionally, Canales engaged in intra-office communications relating to Rentclub and to litigation which was substantially related to this case. Indeed, Canales was deposed in that related litigation which employed in Transamerica's Magic division.

5. After he was discharged by Transamerica on September 23, 1991, Canales retained possession of certain confidential documents and information of Magic and Transamerica which he subsequently disseminated to present and former borrowers of Transamerica and persons who were involved in disputes with Transamerica without their consent.

6. Presently, Canales is a self-proclaimed fact witness in this case. No more than Five (5) days after having being retained as "trial consultant" by the Trenam firm Canales executed an

affidavit attacking Transamerica and in support of Rentclub.

7. The appearance of professional impropriety includes: 1) the payments to Canales appear to have induced him to disclose confidential matters relating to Transamerica's managerial practices and strategies, theories and mental impressions in this and/or substantially related litigation and 2) the appearance of paying Canales for factual testimony.

 A district court has the responsibility for controlling the conduct of attorneys appearing before it and has broad discretion in deciding motions for disqualification, on appeal the determination should not be disturbed without a showing of abuse of discretion. *Cronin v. Eighth Judicial District Court*, 105 Nev. 635, 781 P.2d 1150 (1989). Where the question arises any doubt should be resolved in *favor of disqualification. Cronin*, 781 P.2d at 1153.

## DISCUSSION

### I. *Basis and Standard for Disqualification*

 The professional conduct of all members of the Bar of this Court is governed by the model rules of professional conduct of the American Bar Association as modified and adopted by the Supreme Court of Florida. *U.S.Dist.Ct., M.D.Fla. Loc.R.* 2.04(c). While the Code of Professional Conduct does not contain an express provision prohibiting the appearance of impropriety, Florida law clearly retains this requirement. In *State Farm Mutual Auto. Co. v. K.A.W., etc., et al.*, 575 So.2d 630, 633 (Fla.1991), the Florida Supreme Court ruled that attorneys must still avoid even the appearance of professional impropriety. Accordingly, it has been held "even an appearance of impropriety may, under the appropriate circumstances, require prompt remedial action from the court ... Consequently, any doubt is to be resolved in favor of disqualification." *Id.* at 718.

 The appearance of professional impropriety resulting from the attorney-"trial consultant" relationship in this case takes two general forms. First, there is the ap-

pearance that Trenam, Simmons, through it payments to Canales, has induced Canales to disclose to it confidential matters relating to TRFC's managerial practices and relating to TRFC's strategies, theories and mental impressions in this and/or substantially related litigation. An irrefutable presumption of such inducement flows from the fact that Canales, who was privy to confidential and proprietary information belonging to TRFC, is now on retainer for Trenam, Simmons. Such inducement violates: (a) *Fla.Bar Code of Prof.Cond.*, 4-1.6, which requires attorneys to maintain confidentiality and imposes upon attorneys a correlative duty to refrain from inducing others to disclose confidential matters; (b) *Fla.Bar Code of Prof.Cond.*, 4-4.2, which prohibits attorneys from directly communicating with adverse parties, including employees or former employees of the corporate parties represented by counsel; and (c) *Fla.Bar Code of Prof.Cond.*, 4-8.4(d), which prohibits attorneys from engaging in conduct that is prejudicial to the administration of justice.

Second, there is the appearance that Canales is being paid for his factual testimony as opposed to his work as a "trial consultant". Such conduct violates: (a) *Fla.Bar Code of Prof.Cond.*, 4-8.4(c), which prohibits attorneys from engaging in conduct involving dishonesty, fraud, deceit or misrepresentation; and (b) *Fla.Bar Code of Prof. Cond.*, 4-8.4(d) which prohibits attorneys from engaging in conduct that is prejudicial to the administration of justice.

In *Norton v. Tallahassee Memorial Hospital*, 689 F.2d 938, 941 (11th Cir.1982), the Eleventh Circuit adopted a two-prong test for disqualification under Canon 9 (which prohibited the appearance of professional impropriety under the formerly operative Florida Rules of Professional Responsibility). First, although no proof of actual wrongdoing is required, there must exist a reasonable possibility that some specifically identifiable impropriety in fact occurred. Second, the likelihood of public suspicion must outweigh the social interest that will be served by counsel's continued participation.

The *first prong* of the *Norton* test has been satisfied in two ways in this case. First, there is a reasonable possibility that Trenam, Simmons has improperly induced Canales to disclose confidential matters regarding TRFC. From May 20, 1989, through September 23, 1991—which encompasses the date on which Rentclub filed its action (November 21, 1990)—Canales was employed by TRFC in its Magic division. While employed there, Canales had access to Magic and TRFC's confidential and proprietary information. He claims to have been privy to intra-office communications relating to: (a) the status of TRFC loans to various rent-to-own borrowers; (b) accounting methods with respect to such loans; and (c) detailed management plans and practices with respect to such loans. Furthermore, Canales claims to have participated in intra-office communications specifically relating to TRFC's dealings with Rentclub. Canales testified that he had contact with TRFC's in-house counsel, Craig Heberton, while employed at TRFC. According to Canales, his duties required him to review all financial records submitted by his Magic stores and he was entrusted with responsibility for Magic's books and records in Dallas. Additionally, as finance manager, Canales purportedly attended regular management meetings with senior managers of Magic and TRFC. Canales maintains that, while under TRFC's employ, he also had intra-office communications with respect to related litigation with other rent-to-own operators, Imagination Stores, Inc. and Sanders South Co., Inc. While employed by TRFC, Canales testified at a deposition in the *Imagination* and *Sanders* lawsuits, one of which Rentclub itself contends is substantially related to this action. Upon his discharge, Canales retained some of Magic's confidential business documents, including training manuals, price sheets and rating sheets. Without TRFC's consent, Canales disseminated copies of these confidential documents and other confidential information to present and former TRFC borrowers and persons who are involved in disputes with TRFC.

Second, there is a reasonable possibility that Trenam, Simmons acted improperly by paying Canales for factual testimony under the pretext of retaining him as a "trial consultant". The very fact that Canales executed his affidavit attacking TRFC only five days after he was retained to be a "trial consultant" is telling evidence of Trenam, Simmons' payoff to Canales. *See Am. Prot. Ins. Co. v. MGM, etc.*, CV–LV–82–26 (HEC), CV–LV–82–96 (HEC), 1983 W.L. 25286 (D.Nev. December 8, 1983) (*"MGM I"*) (District court found disqualification warranted because of a transparent attempt to utilize the pretext of a "trial consultant" relationship to shield an attorney's unethical conduct); *Am. Prot. Ins. Co. v. MGM, etc.*, CV–LV–82–26 (HDM), CV–LV–82–96 (HDM), 1986 W.L. 57464 (D.Nev. March 11, 1986) (*"MGM II"*) (District Court reaffirmed its disqualification of defense attorney, ruling that the pretext of the attorney-"trial consultant" negotiations created an apparent inducement to disclose confidential matters and payment to a fact witness). In *In re Data General Corp. Antitrust Litigation*, 5 Fed.R.Serv.3d 510, M.D.L. Docket No. 369 (N.D.Cal. Aug. 1986), the court noted that although the defendant could obtain the testimony of the former employees through depositions or through interviews pursuant to stipulated procedures (providing for advance notice to opposing counsel), it could *not* hire the employees as paid consultants or experts. The court acknowledged that "the defendant was not free to raid plaintiffs' roster of former employees where those employees, during their tenure, have become privy to matters protected by the attorney-client or work-product privilege or which are subject to employee agreements protecting [plaintiffs'] trade secrets." *Id.* at 510. The appearance of impropriety, therefore, arises not only from an inference that an attorney had induced another to breach a confidence, but also from an innuendo that a so-called "trial consultant" is actually a fact witness.

Given Canales' assertion that he was privy to management discussions relating to Rentclub and was employed in a key position at the time the alleged Magic conspiracy supposedly came into existence,

*Norton's* first prong, which merely requires a "reasonable possibility" of impropriety, is easily satisfied.

Satisfaction of *Norton's* first prong is not only clear from the compelling facts of this case, but also is confirmed, as a matter of law, by the irrefutable presumption which controls in this Circuit. In *Cox v. American Cast Iron Pipe Co.*, 847 F.2d 725 (11th Cir.1988), the Eleventh Circuit ruled that if an attorney is engaged in substantially related litigation against a former client, a conclusive presumption arises that confidential information has been given to the attorney. *See also Duncan v. Merrill Lynch, et al.*, 646 F.2d 1020 (5th Cir.1981), *cert. denied*, 454 U.S. 895, 102 S.Ct. 394, 70 L.Ed.2d 211 (1981) (once former client proves that subject matters of present and prior representation are "substantially related", court will *irrebuttably* presume that relevant confidential information was disclosed during former period of representation and disqualify that counsel from the case); *Smalley Transportation Co. v. Prime Computer, Inc.*, 137 F.R.D. 397 (M.D.Fla.1991); *Junger Utility and Paving v. Myers*, 578 So.2d 1117, 1119 (Fla. 1st DCA 1989).

In addition to contending that he was exposed to confidential business information while employed at TRFC—which in itself raises the irrebuttable presumption of breach of confidences stemming from Canales' relationship with Trenam, Simmons—Canales maintains that he engaged in intra-office communications and was a deposition witness with respect to the *Imagination/Sanders* litigation which is substantially related to this litigation.

To be "substantially related" to this action, the *Imagination/Sanders* suits "need only be akin to the present action in a way reasonable persons would understand as important to the issues involved." *In re Corrugated Container Antitrust Litigation, Inc.*, 659 F.2d 1341, 1346 (5th Cir. 1981); *Ruff v. Ivey*, 102 B.R. 868 (M.D.Fla. 1989). Here TRFC easily satisfies this burden. In the *Imagination/Sanders* litigation, disgruntled borrowers, like Rentclub in this litigation, sought damages against

TRFC alleging violations of the RICO statute, fraud, promissory estoppel, unfair and deceptive trade practices and breach of fiduciary duty based in part on the Magic conspiracy. That alleged conspiracy is identical to the conspiracy alleged by Rentclub in this case. Rentclub also asserts causes of action under the RICO statute, for unfair and deceptive trade practices, breach of fiduciary duty and promissory estoppel. Rentclub has already represented to this Court in it Second Amended Complaint that Transamerica's fraudulent schemes have become apparent through its dealings with Rentclub and with other rent-to-own businesses throughout the southeastern United States who have sought redress in the courts through actions styled. *Imagination Stores, Inc., et al. v. Transamerica Commercial Finance Corporation, et al.*, Case No. D0005CV901512, District Court, Bowie County, Texas ... (This case is the same case which was the subject of Canales' alleged intra-office communications and deposition testimony while employed by TRFC.)

The *second prong* of the *Norton* test, the likelihood of public suspicion outweighing the social interest that will be served by counsel's continued representation, is self-evident. The likelihood of public suspicion resulting from the $5,000 advance payment to Canales outweighs the social interest, if any, that will be served by Trenam, Simmons' continued participation as counsel. Trenam, Simmons' relationship would raise serious doubts concerning the integrity of the Bar and these judicial proceedings if Trenam, Simmons was not disqualified. The court in *Kleiner v. First National Bank*, 751 F.2d 1193 (11th Cir.1985), has held that "the court can order disqualification of counsel ... where there is at least a reasonable possibility that some specifically identifiable impropriety did occur and where court finds that the likelihood of public suspicion or obloquy outweighs the social interest which will be served by a lawyer's continued participation in a particular case."

The court in *MMR/Wallace Power & Industrial, Inc. v. Thames and Associates, et. al.*, 764 F.Supp. 712 (D.Conn.1991), has

also held that "the presumption—that confidential information was received creates at least an appearance that defendant has obtained an unfair advantage at trial—taints the judicial proceedings so as to warrant disqualification." The *MMR* court established, just as this Court confirms, that the likelihood of public suspicion aroused by this relationship necessarily outweighed the social interest that would be served by counsel's continued participation.

## II. *EX PARTE CONTACT WITH FORMER EMPLOYEES*

■ It has been determined that a former employee may be considered a "party" for purposes of Model Rule 4.2. *See Public Service Electric and Gas Co. v. Associated Electric and Gas Insurance Services, Ltd.*, 745 F.Supp. 1037 (D.N.J.1990); *Cronin v. Eighth Judicial Court*, 105 Nev. 635, 781 P.2d 1150 (1989). Rule 4.2 of the American Bar Association, *Model Rules of Professional Conduct* states that:

> In representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so.

The comments to this Model Rule explain its application where the client is not an individual but an *organization:*

> In the case of an organization, this Rule prohibits communications by a lawyer for one party concerning the matter in representation with persons having a managerial responsibility on behalf of the organization, and with any other person whose act or omission in connection with that matter may be imputed to the organization for purposes of civil or criminal liability or whose statement may constitute an admission on the part of the organization. *Id.* at 79.

■ An organizational "party" is defined as including: (1) managerial employees, (2) any other person whose acts or omissions in connection with the matter at issue may be imputed to the corporation for liability, and (3) persons whose statements consti-

tute admissions by the corporation. *Polycast Technology Corp. v. Uniroyal, Inc.*, 129 F.R.D. 621, 625 (S.D.N.Y.1990). While the first and third categories are clearly limited to current employees, several courts and commentators, however, have argued that the second category is broad enough to include former employees whose acts could result in vicarious liability for the employer. *See Chancellor v. Boeing Co.*, 678 F.Supp. 250 (D.Kan.1988); *Amarin Plastics, Inc. v. Maryland Cup Corp.*, 116 F.R.D. 36, 39–40 (D.Mass.1987); *Sperber v. Mental Health Center*, No. 82 C7428 (S.D.N.Y. Nov. 21, 1983).

Cases that follow the traditional interpretation of DR 7–104(A)(1), the precursor to Model Rule 4.2—which was not meant to include former employees within the definition of the corporate "party"—do not involve the situation where a former employee was privy to the corporation's legal strategies after his employment had terminated or where a former employee had access to privileged information while employed. It has been held that "the problem of protecting privileged material is best dealt with on a case-by-case basis. And where there is a strong likelihood that a former employee does possess such information, an appropriately tailored order can be issued." *Polycast* at 628.

Privileged communications present a distinct problem with respect to contact with former employees, thus *ex parte* contact should be barred to prevent disclosure of any inadvertent confidential communications. The focus is on whether the former employee's statements could be admissions against the corporation or whether their actions could be imputed to the corporation. *See* Miller and Calfo, *Ex Parte Contact with Employees and Former Employees of a Corporate Adversary: Is It Ethical?*, 42 Bus.Law. 1053 at 1072–73 (1987):

> [C]ourt authorization or opposing counsel's consent to ex parte contact should be required if the former employee was highly-placed in the company (such as a former officer or director) or if the former employee's actions are precisely

658

those sought to be imputed to the corporation.

The interest of the corporation in protecting privileged information acquired by an employee during the course of employment from disclosure to an opponent in litigation remains after the employee leaves the corporation. The court in *Sperber supra* recognized that "even though a former employee may lack the necessary agency relationship required to make statements admissible against the corporation, the relation or connection of the employee to the corporation's potential civil liability may be so close as to require, in all fairness, that the adversary's ex parte contacts be prohibited." The fact that Canales is now a former employee does not alter the relation or connection with defendant, Transamerica, or its potential civil liability. As Magic's purported chief financial officer, Canales was privy to confidential and proprietary information and had access to confidential business documents belonging to TRFC and Magic. *See Porter v. Arco Metals*, 642 F.Supp. 1116, 1118 (D.Mont.1986) (Rule 4.2 has been held to bar *ex parte* contact with former employees who, while employed, had "managerial responsibilities" concerning the matter in litigation). Additionally, Canales engaged in intra-office communications relating to Rentclub and to litigation which was substantially related to this case. Canales was deposed in that related litigation while employed by TRFC *in its Magic division*. After he was discharged by TRFC *from his position at Magic* on September 23, 1991, Canales retained possession of certain confidential documents and information *of Magic and TRFC* which he subsequently disseminated to present and former borrowers of TRFC and persons who were involved in disputes with TRFC without the consent of TRFC. Canales' statements and actions are easily imputed to the Transamerica.

It has been recognized that a former employee who is a "party" because of his position and knowledge will remain a party even after he leaves the corporation because that employee has a memory. The corporation continues to have a vital interest in the employee's knowledge of privileged information and its potential release to opposing counsel in litigation after the employee leaves. *See American Protection Insurance Co. v. MGM Grand Hotel*, No. CV–LV–82–26 HDM (D.Nev. Mar. 13, 1986) (a violation of ethical rules and disqualification resulted where attorney for opposing party had *ex parte* contacts with a former employee who had access to legal thinking of the corporation). For these reasons, "party" under Model Rule 4.2 should include Canales, a former employee of Transamerica, a corporate party. The purpose behind the ethical rule would better be served through the extension of the definition of "party" to include former employees. Accordingly it is

ORDERED that the motion to disqualify counsel be granted and the request for judicial notice in relation to motion to disqualify be granted and the cause be stayed for 120 days to allow the McCaskeys to obtain substitute counsel and for new counsel to have adequate time to familiarize themselves with this complex litigation.

DONE and ORDERED.