Pamela LANG, Barbara Brown, and Mary Michele Bartley, Plaintiffs,

v.

**REEDY CREEK IMPROVEMENT DISTRICT and Walt Disney World Co., a foreign corporation, Defendants.**

No. 94–693–CIV–ORL–19.

United States District Court, M.D. Florida, Orlando Division.

March 28, 1995.

**1144**

M. Susan Sacco, Bernard H. Dempsey, Jr., Dempsey & Associates, P.A., Orlando, FL, for Pamela F. Lang, Barbara Brown, Michele Bartley.

Thomas Chason Garwood, Jr., Barbara J. Lorence, Garwood, McKenna & McKenna, Orlando, FL, for Reedy Creek Imp. Dist.

Carol Sue Pacula, Walt Disney World Co., Lake Buena Vista, FL, Weyman T. Johnson, Jr., Nancy E. Rafuse, Paul, Hastings, Janofsky & Walker, Atlanta, GA, for Walt Disney World Co.

### ORDER

FAWSETT, District Judge.

This case came before the Court on Plaintiffs' Memorandum of Law Regarding **Ex Parte** Communications by Plaintiffs with Former and Current Employees of Defendants (Doc. No. 26, filed February 9, 1995); Plaintiffs' Notice of Filing and Scrivener's Error (Doc. No. 29, filed February 14, 1995); Defendant Reedy Creek's Memorandum of Law Regarding Plaintiffs' **Ex Parte** Communications with Former and Current Employees of Defendants (Doc. No. 30, filed February 15, 1995); Defendant Walt Disney World Co.'s Response to Plaintiffs' Motion Regarding Plaintiffs' **Ex Parte** Communications with Former and Current Employees of Defendants (Doc. No. 31, filed February 15, 1995); Defendant Reedy Creek Improvement District's Response and Designation of Employees who are Protected from Plaintiffs' Counsel's **Ex Parte** Communications (Doc. No. 34, filed February 24, 1995); and Plaintiff's Court-Directed Reply to Reedy Creek Improvement District's Response and Designation of Employees who are Protected from Plaintiffs' Counsel's **Ex Parte** Communications (Doc. No. 35, filed March 6, 1995).

### Background

Plaintiffs, current or former female firefighters, have sued the Defendants for statutory sex discrimination, violations of Title VII and state civil rights law, and common law claims of sexual harassment, intentional infliction of emotional distress and invasion of privacy. The parties have sought this Court's guidance to resolve a discovery dispute concerning the appropriate scope of contact Plaintiffs' counsel may pursue with Defendants' employees and former employees under the applicable ethical rules and case law. Pursuant to this Court's Order of February 3, 1995 (Doc. No. 24), each party has filed a memorandum which presents its position on this matter.[1]

The Plaintiffs contend that they are entitled to "informally contact" any former employee of Defendants without prior identification, except any individuals specifically identified by Defendants as having attorney-client privileged information. Plaintiffs also contend that they may contact any current employee of Defendants without prior identification, unless the employee falls within one of the categories specified in the Comment to Florida Bar Rule of Professional Conduct 4–4.2 ("Rule 4–4.2").[2]

---

1. Defendant Walt Disney World Co., in its Response to Plaintiffs' Motion to Schedule Time for Filing Legal Memoranda on Issue of Contacting Employees with Supporting Authority (Doc. No. 22, filed January 14, 1995), requested that the Plaintiffs identify those employees which Plaintiffs' counsel intended to contact. There was discussion at the Preliminary Pretrial Conference, held February 16, 1995, of "35 current or former employees" whom the Plaintiffs intended to contact. The Court's Order (Doc. No. 24) did not require identification of these individuals by name. The Court presumes that Plaintiffs wish to contact the individuals named in the Verified Amended Complaint (although more than 35 individuals are named therein), because Plaintiffs

have not provided this Court with any other means of identifying said individuals. Plaintiffs have not directly addressed Defendant WDW's objections to Plaintiffs' contact of the four particular individuals identified at the Preliminary Pretrial Conference. *See* n. 3, herein.

2. Florida Bar Rule of Professional Conduct 4–4.2, Communication with Person Represented by Counsel ("Rule 4–4.2") provides, in pertinent part:

In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless

The Defendants take the position that **ex parte** contact must be severely limited. Walt Disney World, Co. ("WDW") contends that Plaintiffs must identify by name all current and former employees with whom Plaintiffs' counsel desires informal contact before attempting to contact them so the propriety of any **ex parte** contacts can be determined on a witness by witness basis.[3] Defendant Reedy Creek Improvement District ("RCID") takes the position that Plaintiffs are precluded from all informal, unrepresented contact with current employees of the Defendants and any former employees who hold privileged information regarding this lawsuit or who can impute liability to the Defendants for the conduct alleged by Plaintiffs in their Verified Amended Complaint. (Doc. No. 30). Specifically, Defendant RCID believes that Plaintiffs' counsel should be prevented from **ex parte** communications with all current and former RCID employees

named by Plaintiffs in the Verified Amended Complaint, with the exception of Gail Brennan.[4]

## Legal Analysis

The propriety and extent of **ex parte** communications with current and former employees of an adverse party in a lawsuit is far from well-settled.[5] Neither the Eleventh Circuit nor the Florida Supreme Court has decisively ruled on this issue. The Court has reviewed the arguments of and cases cited by the parties as well as the scholarly commentary noted herein. By its ruling, it is the Court's intent to weigh the Plaintiffs' need for informal discovery and the Defendants' need for effective legal representation and to avoid both unnecessary impediments to informal discovery and inadequate protection of corporate interests. *See* Fitzpatrick, C932 A.L.I.–A.B.A. at 316.

the lawyer has the consent of the other lawyer
. . .
The Comment to this Rule provides that in the case of an organization, the rule prohibits communications by a lawyer for one party about the matter in representation with:
persons having a managerial responsibility on behalf of the organization and with any other person whose act or omission in connection with that matter may be imputed to the organization for purposes of civil or criminal liability or whose statement may constitute an admission on the part of the organization. If an agent or employee of the organization is represented in the matter by the agent's or employee's own counsel, the consent by that counsel to a communication will be sufficient for purposes of this rule.
This rule is substantially similar to the American Bar Association Model Rule of Professional Conduct 4.2 ("RPC 4.2") which provides:
In representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.
Because the Florida and ABA rules, as well as the rules of other states, the Court incorporates analysis, where appropriate, from cases from other jurisdictions.
3. At the Preliminary Pretrial Conference, held February 16, 1995, WDW identified four current or former employees which it contended should not be informally contacted by the Plaintiff: Sandi Adams, a Ms. Gay, Bill O'Toole and Jerry Montgomery. Only Sandi Adams and Jerry

Montgomery are mentioned by name in the Verified Amended Complaint, although whether an individual was so named is not relevant to the Court's ruling.

4. As to Ms. Brennan, RCID asks that if the Plaintiffs' counsel intends to use her as a witness in this case, RCID's counsel be allowed to depose Ms. Brennan in addition to the ten depositions permitted by the Case Management and Scheduling Order. (Doc. No. 34)

5. For a review of the diversity of approaches to **ex parte** communications, *see, e.g.,* Robert B. Fitzpatrick and Kathleen H. Kim, *Ex Parte Communications with Current and Former Employees,* C932 A.L.I.–A.B.A. 311 (1994) (hereafter "Fitzpatrick"); Vicki Jan Isler, *Ex Parte Interviews of Former Employees: An Attorney's Ethical Obligation,* 457 P.L.I./Lit 55 (1993) (hereafter "Isler"); Samuel R. Miller and Angelo J. Calfo, *Ex Parte Contact With Employees and Former Employees of a Corporate Adversary: Is It Ethical?,* 42 Bus.Law 1053 (1987) (hereafter "Miller"); David W. Garland, *Ethical Conflicts and Professional Considerations—Selected Issues,* C780 A.L.I.–A.B.A. 683 (1993) (hereafter "Garland"); Felicia Ruth Reid, Comment, *Ethical Limitations on Investigating Employment Discrimination Claims: The Prohibition on Ex Parte Contact with a Defendant's Employees,* 24 U.C.Davis L.Rev. 1243 (1991) (hereafter "Reid") and cases cited therein; and John E. Iole and John D. Goetz, *Ethics or Procedure? A Discovery–Based Approach to Ex Parte Contacts with Former Employees of a Corporate Adversary,* 68 Notre Dame L.Rev. 81 (1992).

### 1. Former Employees

Both the American Bar Association ("ABA") and the Florida Bar Professional Ethics Committee have considered the propriety of counsel's **ex parte** contacts with former employees of an adverse party. These opinions, of course, are not binding on this Court.

The American Bar Association interpreted ABA Model Rule of Professional Conduct 4.2 ("RPC 4.2"), entitled "Communication with Person Represented by Counsel", in Formal Opinion 91–359, issued in 1991. In pertinent part the Committee stated:

> While the Committee recognizes that persuasive policy arguments can be and have been made for extending the ambit of Model Rule 4.2 to cover some former corporate employers [sic], the fact remains that the text of the Rule does not do so and the comment gives no basis for concluding that such coverage was intended. Especially where . . . the effect of the Rule is to inhibit the acquisition of information about one's case, the Committee is loath, given the text of Model Rule 4.2 and its Comment, to expand its coverage to former employees by means of liberal interpretation.

ABA Comm. on Ethics and Professional Responsibility, Formal Op. 91–359 (1991).

Several district courts have relied upon this ABA opinion and made observations about RPC 4.2 and its application which are worthy of note in the instant case. In *Curley v. Cumberland Farms, Inc.,* the court emphasized that RPC 4.2 is an ethical rule, not a rule through which corporate parties gain the ability to control the flow of information to opposing parties. 134 F.R.D. 77, 82 (D.N.J.1991). Also, the court noted that RPC 4.2 is designed to protect the attorney-client relationship, not to control the flow of information relevant to a lawsuit. *Id.* at 82–83. Another court has opined that permitting a defendant to "barricade huge numbers of potential witnesses from interviews except through costly discovery procedures may well frustrate the right of an individual plaintiff with limited resources to a fair trial and deter other litigants from pursuing their legal remedies." *Frey v. Dept. of Health and Human Services,* 106 F.R.D. 32, 36 (E.D.N.Y.1985) (Title VII action). This restriction on informal discovery is of special concern in a Title VII or other employment discrimination action, such as the case at bar, where there is unlikely to be an admission or "paper trail" upon which the plaintiff can base the case. *See Goff v. Wheaton Industries,* 145 F.R.D. 351, 356 & n 3 (D.N.J.1992) (quoting *Riordan v. Kempiners,* 831 F.2d 690, 699 (7th Cir.1987). This Court concurs with the wise opinions of the courts quoted above, especially as applied to the facts of the instant case.

The Florida Bar Professional Ethics Committee ("FBPEC"), analyzed Florida's Rule 4–4.2 and reached a conclusion similar to the ABA's conclusion about RPC 4.2. Opinion Number 88–14, (1989). The FBPEC opinion stated:

> As regards former managers and other former employees who have not maintained any ties with the corporation—who are no longer part of the corporate entity—and who have not sought or consented to be represented in the matter by the corporation's attorneys, the answer [to the question of whether attorneys are prescribed from contacting former managers and other former employees of a defendant corporation except with the permission of the corporation's attorneys] must be in the negative.

Notwithstanding this opinion, the Honorable Elizabeth Kovachevich, of the Middle District of Florida, Tampa Division has opined that the purpose behind Rule 4–4.2 would be better served through the extension of the rule to include former employees. *Rentclub v. Transamerica Rental Finance,* 811 F.Supp. 651, 658 (M.D. Fla.1992) *aff'd* 43 F.3d 1439 (11th Cir.1995).

In *Rentclub,* the counter-plaintiff, Transamerica, moved to disqualify the counter-defendant Rentclub's attorney. The ground for this motion was that Rentclub's attorney retained as a paid trial consultant the self-described former "chief financial officer" of a division of Transamerica. This man, Mr. Canales, was privy to confidential and proprietary information and retained possession

of confidential documents and information after his discharge. Mr. Canales received an advance payment of $5,000.00 from Rentclub's counsel which the court found gave the appearance of being payment for factual testimony and appeared to have induced Mr. Canales to disclose confidential matters relating to Transamerica's business and its strategies, theories and mental impressions in this and/or substantially related litigation. 811 F.Supp. at 654.

Mr. Canales fell within the court's definition of organizational "party," which included: (1) managerial employees, (2) any other person whose acts or omissions in connection with the matter at issue may be imputed to the corporation for liability, and (3) persons whose statements constitute admissions by the corporation. *Rentclub*, 811 F.Supp. at 657, (citing *Polycast Technology Corp. v. Uniroyal, Inc.*, 129 F.R.D. 621, 625 (S.D.N.Y. 1990)). The court concurred with commentators who opined that:

> [C]ourt authorization or opposing counsel's consent to **ex parte** contact should be required if the former employee was highly-placed in the company (such as a former officer or director) or if the former employee's actions are precisely those sought to be imputed to the corporation.

811 F.Supp. at 657–58 (quoting Miller and Calfo, *Ex Parte Contact with Employees and Former Employees of a Corporate Adversary: Is It Ethical?*, 42 Bus.Law. 1053 at 1072–73 (1987)).

■ The *Rentclub* court did not specifically limit its holding to the facts of that case, but the court's discussion was heavily focused on high-level employees such as Mr. Canales who were privy to substantial privileged or confidential information. Therefore, this Court recognizes but declines to apply *Rentclub*'s blanket prohibition on **ex parte** communications with all former employees to the facts in the case at bar.[6]

■ Instead, the Court generally concurs with those courts that hold that **ex parte** communications with former employees of an adverse party are permissible, with limitations, under the governing ethical rules. For instance, in *Curley v. Cumberland Farms, Inc.*, the court permitted **ex parte** communications with former employees who were not known to have had contact with the plaintiffs, because even if the former employees admitted adverse acts, such admissions alone would not impute liability to the defendant corporation.[7] 134 F.R.D. 77, 81 (D.N.J.1991). The magistrate judge determined that because the former employees lacked managerial responsibility, were not the subject of imputed liability, and were incapable of making admissions that would be binding upon the corporate defendant, there was no basis to find that they were the equivalent of "parties" under RPC 4.2. 134 F.R.D. at 92. The magistrate judge established, and the district court adopted, guidelines for plaintiffs' contact with the 80 former employees, including specific requirements for the recordation of efforts to contact the individuals, memorializing the details of said conversations, and providing these records (excluding any work product) to defendants upon request. *Id.* at 94–95.[8]

---

6. "A district court is not bound by another district court's decision, or even an opinion by another judge of the same district court." *Fox v. Acadia State Bank*, 937 F.2d 1566 (11th Cir. 1991).

7. The plaintiffs sued their former employer and alleged that certain "Loss Prevention Specialists" had enabled the defendant store owners to engage in a pattern of extortion by coercing false confessions out of Cumberland Farms employees to cover store losses. Plaintiffs agreed not to contact **ex parte** any Loss Prevention Specialists then employed by Cumberland Farms or any former Loss Prevention Specialists who actually had contact with any of the fourteen plaintiffs in the action. The only disputed issue was whether the plaintiffs should be prevented from **ex parte** contact with former employees. 134 F.R.D. at 79.

8. The imposition of restrictions on plaintiffs' counsel is not unique. In *In re Home Shopping Network, Inc.*, an unpublished magistrate opinion, the plaintiffs were directed to instruct the former employee witnesses not to disclose information covered by the attorney/client privilege or confidentiality agreement and to cut off inquiry into such matters if it appeared that the former employee has erroneously volunteered such information. 1989 WL 201085 (M.D.Fla.1989). In *Suggs v. Capital Cities/ABC, Inc.*, another unpublished magistrate opinion, the plaintiff's counsel was permitted to interview *current* em-

In *Goff v. Wheaton Industries*, the court concurred with the reasoning of *Curley* and assigned the burden of showing the application of RPC 4.2 to the party seeking the protection of the Rule. 145 F.R.D. 351, 356 (D.N.J.1992). The magistrate judge emphasized that such preliminary showing must be based on fact, not hypotheticals, and found that the defendant had failed to provide legal justification for the protective order it sought. *Id.* In *Goff,* the plaintiff had disclosed a complete list of former employees he intended to contact. Therefore, although the *Goff* defendant, Wheaton Industries, was not granted a protective order, it was not barred from pursuing its own informal discovery with the same individuals because the interviews with plaintiff's counsel would not be privileged.[9] *Id.* at 357.

In *Polycast Technology Corporation v. Uniroyal, Inc.,* the magistrate held that **ex parte** communications with a former employee[10] are not barred by the ethical rules absent a particularized showing that contacts with the former employee would jeopardize privileged communications. 129 F.R.D. 621, 629 (S.D.N.Y.1990); *see also Cram v. Lamson & Sessions Co., Carlon Division,* 148 F.R.D. 259 (S.D.Iowa 1993) (magistrate opinion); *Hanntz v. Shiley, Inc., a Div. of Pfizer, Inc.,* 766 F.Supp. 258 (D.N.J.1991); *Manor Care of Dunedin, Inc. v. Keiser,* 611 So.2d 1305, 1308 (Fla. 2d DCA 1992).

Access to an organizational party's employees should be regulated on the basis of a balancing of interests affected in the particular case. *See e.g., New York State Ass'n for Retarded Children, Inc. v. Carey,* 706 F.2d 956, 960–61 (2d Cir.), *cert. denied,* 464 U.S. 915, 104 S.Ct. 277, 78 L.Ed.2d 257 (1983). Proof of wrongdoing, and especially of discrimination, is difficult to establish, and Plaintiffs must be afforded the opportunities to discover all factual information pertinent to their case. *Goff v. Wheaton Industries,* 145 F.R.D. 351, 356, n. 3 (D.N.J.1992). The *Goff* court favored flexibility in the discovery process, a position with which this Court concurs. The ability to informally interview former employees of the Defendants would materially assist Plaintiffs' preparation of their case at both the summary judgment and trial stages and reduce the costs of litigation for both parties.

Therefore, the Court determines that Plaintiffs and their counsel may initiate **ex parte** communications with former employees of the Defendants under any applicable ethical and procedural rules and the following guidelines:

1. Upon contacting any former employee, Plaintiffs' counsel shall immediately identify herself as the attorney representing Plaintiffs in the instant suit and specify the purpose of the contact.

2. Plaintiffs' counsel shall ascertain whether the former employee is associated with either Defendant or is represented by counsel. If so, the contact must terminate immediately.

3. Plaintiffs' counsel shall advise the former employee that (a) participation in the

---

**9.** In the case at bar, other than the individuals specified by name in the Verified Amended Complaint, Plaintiffs have not provided a list of individuals whom they intend to contact. Defendant WDW states that Plaintiff has already been asked, via interrogatory, to identify any individuals whom they or their attorneys interview. Therefore, although none of these individuals has yet been identified, Plaintiffs will be required to supplement their interrogatory response pursuant to Federal Rule of Civil Procedure 26(e), and Defendants will then have the opportunity to pursue their own informal contact with these individuals.

**10.** Interestingly, in *Polycast,* the "former employee" in question was a former employee of both party corporations.

---

ployees of the Defendants, provided plaintiff's counsel notified defense counsel at least 72 hours prior to the contact, identified himself (as plaintiff's attorney) and the purpose of the contact at the onset of the conversation, respected an employee's wish not to be interviewed, and did not question about matters observed by the employee in the course of performance of the employee's duties for the defendant or communications subject to the attorney/client privilege. 1990 WL 182314 (S.D.N.Y.1990). Defense counsel was also directed to advise those employees identified by plaintiff's counsel that no adverse action would be taken against them if they agreed to the interview and that each employee was free to refuse to consent to an interview or could choose to be interviewed only in the presence of counsel. *Id. See also In re Infant Formula Antitrust Litigation,* 1992 WL 503465 (N.D.Fla.1992).

interview is not mandatory and that (b) he or she may choose not to participate or to participate only in the presence of personal counsel or counsel for the Defendants. Counsel must immediately terminate the interview of the former employee if she or he does not wish to participate.

4. Plaintiffs' counsel shall advise the former employee to avoid disclosure of privileged materials. In the course of the interview, Plaintiffs' counsel shall not attempt to solicit privileged information and shall terminate the conversation should it appear that the interviewee may reveal privileged matters.

5. Plaintiffs shall create and preserve a list of all former employees contacted and the date(s) of contact(s) and shall maintain and preserve any and all statements or notes resulting from such contacts, whether by phone or in person. Defendants are entitled to review the lists and notes within seven (7) days of demand subject to the protections of work product.

6. Should the Defendants have reason to believe that a violation of either the ethical rules or this Court's Order has occurred, the Defendants shall file an appropriate motion with this Court. Appropriate sanctions or remedial measures will be imposed if a violation is found by the Court. If the violation is revealed at trial, the Defendants shall make such motion in open Court, and the Court will take the matter under advisement at that time.

### 2. Current Employees

■ Such protective guidelines cannot be as easily imposed on **ex parte** contact with current employees because contact with such employees is much more likely to raise ethical problems. As noted above, the Comment to Rule 4–4.2 prohibits attorneys from communication with managerial employees and any other person whose acts or omissions in connection with the matter at issue may be imputed to the corporation for liability or whose statements could constitute admissions by the corporation. Plaintiffs have repre-

sented to this Court that they only seek to question fact witness employees about matters that are "not a part of their official duties" and that they "will not inquire into any acts or omissions of an employee that could be imputed to Defendants for the purpose of liability." (Doc. No. 26, at 17, 18–19). However, in their reply brief Plaintiffs take a different approach and argue that contact should be permitted because evidence of a co-worker's actions alone does not impute liability in a Title VII case. Plaintiffs must also show that they either "complained to higher management or [that] the harassment was pervasive enough to charge the employer with constructive knowledge." *Vance v. Southern Tel. and Tel. Co.*, 863 F.2d 1503, 1512 (11th Cir.1989). A statement from a co-worker which could lead to imputed liability does not impute liability itself, and therefore Plaintiffs contend that the **ex parte** communications it seeks are permissible.

Defendants argue that persons who are still employed by the Defendants, many of whom are alleged by Plaintiffs to be actors/participants in the alleged harassment, could make statements which might be admissible under Fed.R.Evid. 801(d)(2). Therefore, Defendants conclude that these employees are "parties" under the ethical rules and **ex parte** contact with them is prohibited. *See, e.g., Polycast,* 129 F.R.D. at 627.

It would be difficult to conceive of a scenario in which Plaintiffs could contact current employees other than Greg Lang [11] without risking violation of the ethical rules and the representation Plaintiffs have made to this Court. Because of the increased risks of prejudice to the Defendants that would arise from **ex parte** communications with current employees, the plain language of the ethical rules, and Defendants' opposition to such contact, the Court is unwilling to give Plaintiffs the "green light" for such discovery. *See Rentclub,* 811 F.Supp. at 654; *Infant Formula* at *8; *see also State Farm Mut. Auto. Ins. Co. v. K.A.W.,* 575 So.2d 630, 633 (Fla.1991) (counsel must avoid even the appearance of impropriety in its conduct). However, if Plaintiffs provide the Court and

---

11. Greg Lang, husband of Plaintiff Pamela Lang, could presumably provide factual information regarding the damages allegedly suffered by Plain-

tiff Lang as a result of the alleged discrimination. Such information would not "impute liability" to the Defendants.

**1150**

the Defendants with the names of the current employees they seek to contact, the Court is willing to reconsider its decision on an employee by employee basis after Defendants have had adequate time to respond. Given the unusually large quantity of potential witnesses, the Court will also give due regard to motions to increase the allowable amount of discovery.

### *Conclusion*

Based on the foregoing, the Court rules as follows:

1. Plaintiff may initiate contact with Defendants' former employees pursuant to appropriate ethical rules and the guidelines set forth herein.

2. Plaintiff shall not initiate **ex parte** communications with current employees of the Defendants absent prior consent of Defense counsel or this Court.

**DONE AND ORDERED.**